CHUN KERR LLP
A Limited Liability Law Partnership

NATHANIEL A. HIGA  #9064-0
JASON W. JUTZ         #10659-0
First Hawaiian Center
999 Bishop Street, Suite 2100
Honolulu, Hawaii  96813
Telephone:  (808) 528-8200

Attorneys for Plaintiff
SARAH TESKE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SARAH TESKE, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT; DEMAND FOR |
| vs. | ) | JURY TRIAL |
| | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF KUILIMA ESTATES | ) | |
| EAST CONDOMINIUM, JOHN | ) | |
| DOES 1-10; JANE DOES 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| ENTITIES 1-10; and DOE | ) | |
| GOVERNMENTAL ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

{00588403.9}

## COMPLAINT

Comes now Plaintiff Sarah Teske, by and through her counsel, Chun Kerr LLP, a Limited Liability Law Partnership, and for a Complaint alleges and avers as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction in this Court is proper under 28 U.S.C. § 1332(a)(1).  The parties are of diverse citizenship and the amount in controversy, as appears hereafter, is in excess of $75,000.

2.      Venue is proper in this District pursuant to U.S.C. § 1391(b) because the AOAO and Doe Defendants (collectively, the "**Defendants**") are residents of, are found within, and have agents within, or transact their affairs in this District, and the activities giving rise to this action occurred in this District.

## PARTIES

3.      Plaintiff Sarah Teske ("**Plaintiff**" or "**Ms. Teske**"), is a resident and citizen of Arlington, Virginia.

4.      Defendant Association of Apartment Owners of Kuilima Estates East Condominium ("**AOAO**"), is a condominium property regime duly existing and organized pursuant to Hawaii Revised Statutes ("**HRS**") Chapter 514B.  The AOAO's members are owners of the units in the Kuilima Estates East, consisting of the separate condominium units, common elements, and limited common

elements, located at 57-091 Lalo Kuilima Street, Kahuku, Hawaii 96731-2117 ("**Kuilima Estates East**").

5.    Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; and DOE GOVERNMENTAL ENTITIES 1-10 (collectively referred to herein as "**Doe Defendants**"), are persons, partnerships, corporations, or other entities which, in some manner presently unknown to Plaintiff, except that they are connected in some manner with the named Defendants, are liable to Plaintiff for the amounts due under the claims and/or causes of action herein alleged and described, and whose true names, identities, and capacities are presently unknown to Plaintiff or its attorneys.  Plaintiff will, therefore, seek leave of Court to identify those defendants when the true identities of said fictitiously named defendants become known to Plaintiff along with the nature of their liability.

## FACTUAL BACKGROUND
## Kuilima Estates East and the AOAO

6.    Kuilima Estates East is a residential complex located on the North Shore of Oahu in Hawaii and is part of what is commonly referred to as "Turtle Bay Resort."

7.    Kuilima Estates East is part of the larger Kuilima Resort, which includes two championship golf courses, the Turtle Bay Resort, and several other residential communities.

8.    Kuilima Estates East is comprised of approximately 148 units, including one, two, and three-bedroom condominiums, townhomes, and villas.

9.    Residents at Kuilima Estates East also have access to amenities such as swimming pools, tennis courts, and walking paths.

10.    The AOAO is governed by the (1) Restatement of Declaration of Horizontal Property Regime, Kuilima Estates East (Condominium Map No. 222), filed with the State of Hawaii, Office of Assistant Registrar on November 1, 2000, as Doc. No. 2661934 ("**Declaration**") and (2) Second Restated By-Laws of the Association of Apartment Owners of Kuilima Estates East Condominium (Condominium Map No. 222), filed with the State of Hawaii, Office of Assistant Registrar Land Court on November 1, 2000, as Doc. No. 2661935 ("**Bylaws**").

11.    The Declaration and Bylaws are collectively referred to as the "**Governing Documents**."

## **Pertinent Provisions of the Governing Documents**

12.    Section A of the Declaration states that pipes that are utilized for or serve more than one apartment are considered "common elements."

13.    Pursuant to the Declaration, "apartments" are "separate freehold estate[s] and . . . include the inner decorated or unfinished surfaces of the adjacent lanai, all of the walls and partitions which are not load-bearing within its perimeter walls, the inner decorated or finished surfaces of all walls, floors and ceilings, the

space within the perimeter walls, floors and ceilings, all exterior doors, exterior

door frames, exterior window frames and windows, and all fixtures originally

installed therein.  The respective apartments shall not be deemed to include the

undecorated or unfinished surfaces of the perimeter walls or interior load-bearing

walls or of any appurtenant lanai, the floors and ceilings surrounding each

apartment or any pipe, wires, conduits or other utility or service lines running

through such apartment which are utilized for or serve more than one apartment,

the same being deemed common elements as hereinafter provided."

14.    Common elements are explicitly defined to include "[a]ll foundations,

columns, girders, beams, supports, bearing walls, lanais, roofs, chases, entries,

stairways, walkways and entrances of said buildings . . .[a]ll ducts, electrical

equipment, wiring and other central and appurtenant installations including all

utilities . . . ."

15.    Section H of the Declaration, Administration of the Project, empowers

and obligates the AOAO to maintain and restore the common elements.  The

Section reads:

> Operation of the project and maintenance, repair, replacement and restoration of the common elements, and any additions or alterations thereto, shall be in accordance with the provisions of said Condominium Property Act, this Declaration and the by-laws of the Association, and specifically without limitation the Association shall:

- Make, build, maintain and repair all fences, sewers, drains, roads, curbs, sidewalks and parking areas which may be required by law to be made, built, maintained and repaired upon or adjoining or in connection with or for the use of the project or any part thereof;

- Keep all common elements of the project in a strictly clean and sanitary condition, and observe and perform all laws, ordinances, rules and regulations now or hereafter made by any governmental authority for the time being applicable to the project or the use thereof.

- Well and substantially repair, maintain, amend and keep all common elements of the project, including without limitation the buildings, with all necessary reparations and amendments whatsoever in good order and condition except as otherwise provided herein, and maintain and keep said land and all adjacent land between any street boundary of the project and the established curb or street line in a neat and attractive condition and all trees, shrubs and grass thereon in good cultivation and replant the same as may be necessary, and repair and make good all defects in the common elements of the project herein required to be repaired by the Association, of which notice shall be given by any owner or his agent within a reasonable time.

16.     Section C of the Declaration, Easements, grants the AOAO right of access to an owner's apartment for the purposes of fulfilling its obligations under Section H.

17.     Section C states the AOAO "shall have the right . . . to enter any apartments and limited common elements . . . as may be necessary . . . for making

emergency repairs therein required to prevent damage to any apartments or common elements or for the installation, repair or replacement of any common elements."

18.     The Bylaws also empower the AOAO, through its Board of Directors ("**Board**"), and impose a duty upon it, to maintain and repair the common elements.

19.     The Bylaws state:  "In addition to powers and duties conferred by these by-laws, the Declaration or resolutions of the Association, the Board shall be responsible for the following . . . Management and operation of the project and maintenance, repair and rebuilding of the common elements thereof . . . ."

20.     The Board is also required to "manage and control the project."

21.     The AOAO is required to carry insurance coverage of a minimum of $100,000.00 for property damage.

### Ms. Teske

22.     Ms. Teske is a veteran of the United States Marine Corps (**"USMC"**).

23.     Ms. Teske served as a Gunnery Sergeant (E7) beginning in 2007.

24.     Ms. Teske was assigned to the Marine Forces Pacific Command G-3 Operations (in support of the Global War on Terrorism).

25.     In or about February 2013, Ms. Teske accepted a position with Booz Allen Hamilton, but remained in the USMC as a reservist.

26.     Her position required Top Secret/Sensitive Compartmented Information ("**TS/SCI**") security clearance.

27.     Ms. Teske purchased Unit 39 (the "**Unit**") at Kuilima Estates East in November 2016.

28.     Ms. Teske retired from the USMC in January 2019 after 12 years of active service.

29.     In April 2019, Ms. Teske resigned from her position with Booz Allen Hamilton, largely in part due to the circumstances described below and the impact the AOAO's inaction had on Ms. Teske, including negatively impacting her credit.

30.     Credit ratings are an integral factor in determining and maintaining qualification for TS/SCI security clearance.

### The 2018 Flood

31.     In late 2018, the Unit experienced a flood due to failure in the wastewater drainage pipes connecting the Unit to Kuilima Estate East's sewage line (the "**2018 Flood**").

32.     The wastewater drainage pipes also connect to units 37, 38, and 40 (collectively, the "**Neighboring Units**").

33.     The wastewater drainage pipes connecting the Unit and the Neighboring Units constitute "common elements" of Kuilima Estate East, pursuant to the Governing Documents.

34.     Unit 37 sits laterally next to the Unit, while units 38 and 40 are directly above unit 37 and the Unit, respectively.

35.     On October 26, 2018, Premier Restoration Hawaii provided an estimate for repair work on the Unit due to the 2018 Flood.

36.     Ms. Teske informed the AOAO of the 2018 Flood.

37.     Despite being aware and/or informed of the 2018 Flood, the AOAO took no action with regard to damage to the Unit due to the failure of the common element wastewater drainage pipes.

38.     Notwithstanding, upon information and belief, sometime between the 2018 Flood and October 2019, the AOAO paid for the cost of repairs to the wastewater drainage pipes underlying unit 37 at Kuilima Estates East.

## The 2019 Flood

39.     On October 19, 2019, the Unit was flooded again ("**2019 Flood**"); this time by over two feet of sewage that back-flowed into the Unit due to failure of the common element wastewater drainage pipes.

40.     At the time of the 2019 Flood, Ms. Teske was residing on the mainland, attending to her four-month-old child's severe health problems.

41.     At the time of the 2019 Flood, the Unit was occupied by lawful short-term renters (the "**Tenants**").

42.     The 2019 Flood forced the Tenants to vacate the Unit.

43.     The AOAO was informed and/or aware of the 2019 Flood, as well as the fact that Ms. Teske was off island and dealing with her child's severe health issues.

44.     The AOAO took no action to address the damage caused by the failure of the common element wastewater drainage pipes.

45.     The AOAO told Ms. Teske that because she was not on island, they would not work with her to address the flooding or make any repairs.

46.     A claim for the damage caused by the 2019 Flood was filed in 2019 under Ms. Teske's policy with First Insurance Company of Hawaii, Ltd. ("**FICOH**"), as claim number "201903127CC – Teske."

47.     FICOH paid approximately $15,000.00 on the claim, which did not cover the cost of the initial demolition or subsequent remediation of the Unit. Demolition of the Unit was required in order to clean and sanitize the Unit.

48.     The remainder of the damages were and are the responsibility of the AOAO or its insurance carrier because the cause of the 2019 Flood was a defect or defects in the common element wastewater drainage pipes.

### Repairs to the Unit and Discovery of the Cause of the 2019 Flood

49.     Ms. Teske retained Alan Shintani, Inc. ("**ASI**"), as contractor to oversee repairs to the Unit because the AOAO failed to take any action with regard to damage to the Unit or to repair the damaged common elements.

50.     ASI conducted an initial inspection of the Unit on April 12, 2022, during which photographs were taken that evidence water damage to, *inter alia*, the floors, cabinets, windows, and walls.  The photos also evidence potential structural damage to the Unit.  At the time of the April 12 inspection, cabinetry in the Unit had already been removed.

51.     The scope of ASI's work was to repair the Unit and replace damaged components.

52.     ASI retained M. Torigoe Plumbing ("**Torigoe**") as a plumbing subcontractor to inspect the wastewater drainage pipes that caused the backflow of sewage into the Unit.

53.     On April 18, 2022, Torigoe "scoped" the wastewater drainage pipes running into the foundation of the Unit and under the neighboring unit, unit 37.

54.     The "scope" involved sending a long wire, with a light and video camera attached at the end, through the wastewater drainage pipes.  The camera on the wire video records the condition and contents of the pipe.

55.     The "scope" went through the main sewer line from the toilet drain.

56.     Torigoe reported:

> The drain runs to the right and is also connected with unit # 40.  The drain continues going right going through [the] front hallway and under unit#37.  At this point under unit#37 was a section that seems to be a damaged area and or a separation in the main drain pipe according to the video.

57.     The "scope" revealed what appeared to be a separation in the
wastewater drainage pipes that is intended to carry sewage from the Unit and the
Neighboring Units out to the City and County of Honolulu's main sewer line,
routed under unit 37.

58.     ASI immediately notified the AOAO of the separation in the
wastewater drainage pipe discovered during the April 18, 2022, "scoping" of the
wastewater drainage pipes in the Unit and underlying unit 37.

59.     On or around April 21, 2022, the AOAO represented that the repairs
due to the damage caused by the 2019 Flood would be covered by the AOAO
because the wastewater drainage pipes at issue were common lines, shared by the
Unit and the Neighboring Units.  At that time, the AOAO also represented that it
would have a plumber come fix the separation under Unit 37.

60.     On or about May 3, 2022, the AOAO, through its managing agent,
requested information from ASI regarding the information provided by Torigoe,
specifically the "video showing the broken line" so that it could review the
information and schedule the repairs.

61.     On or about May 25, 2022, the AOAO, through its managing director,
again represented that the Board would meet to review and approve the expenses
and schedule the repair work.

62.     Upon information and belief, prior to the "scope" on April 21, 2022, prior repair work had been conducted on the wastewater drainage pipes underlying unit 37 (which connect to the wastewater drainage pipes from the Unit and units 38 and 40).

63.     Upon information and belief, the contractor hired by the AOAO to perform repairs to the wastewater drainage pipes underlying unit 37 prior to April 21, 2022, failed to reconnect, or properly reconnect, the wastewater drainage pipes from the Unit and units 38 and 40 to unit 37's wastewater drainage pipes.

64.     Upon information and belief, after the "scope" on April 21, 2022, the AOAO hired a contractor to make (additional) repairs to unit 37 due to damage and/or failure of the wastewater drainage pipes underlying that unit.

65.     Subsequently, and despite being informed and/or aware of the 2019 Flood, the AOAO refused to cover the costs of the repairs to the Unit.

66.     After the April 21, 2022, "scope" of the wastewater drainage pipes, the AOAO's plumber, NK Plumbing, purportedly repaired the wastewater drainage pipes under unit 37.

67.     The AOAO informed NK Plumbing that some of the pipes are the owners' responsibility to maintain and repair and some are the responsibility of the AOAO, but did not explain how the AOAO distinguishes between which pipes are the AOAO's responsibility and which are the owners' responsibility.

68.     NK Plumbing acknowledged that the AOAO's position with regard to allocating responsibility did not make sense since the AOAO was covering the costs of the repairs to unit 37 but not to the Unit.

69.     ASI then retained NK Plumbing to repair the wastewater drainage pipes under the Unit.

70.     Unlike with unit 37, the AOAO did not cover NK Plumbing's costs for the repairs to the Unit.  NK Plumbing invoiced ASI over $12,000.00 for the plumbing repair work to the Unit.

71.     Also in or about April 2022, ASI requested that the AOAO provide as-built drawings for the affected units/project.

72.     In response, the AOAO claimed it did not possess as-built drawings for the units/project.

73.     On or about April 25, 2022, ASI commenced with demolition of the Unit, including, but not limited to, removal of doors and door tracks, windows, sills and trims, jambs, and the bathtub, and opening drywall, all of which had been significantly damaged due to the 2019 Flood.

74.     Photographs taken during the demolition show the work's progression.  The photographs also show the condition and configuration of the in-wall piping, demolition of the concrete flooring/slab, and the Unit generally, in order to access the common element wastewater drainage pipes that connect the

Unit to unit 37.  The photographs reveal conclusively that the wastewater drainage pipes that caused the 2019 Flood are located in the slab of the Unit and within the walls between the Unit and unit 37.

75.     On or about May 2, 2022, ASI commenced remedial work in the Unit, including, but not limited to, framing the doors, adding studs, fabricating door jambs, and hanging new drywall.  The repairs continued through August, and eventually included installation of new cabinets, new appliances, new outlets and switches, and new flooring, along with repaired walls that were then painted.  All of the foregoing repairs were necessary to remediate the damages caused by the 2019 Flood.

76.     The work completed by ASI to repair the Unit cost a total of $146,677.14.  A significant portion of the cost of the repair was incurred due to the necessity of removing debris and sanitizing the Unit prior to commencing the repair work.

77.     Due to the costs of the repair work and the AOAO's failure to cover those costs or reimburse Ms. Teske, the Unit was sold by Ms. Teske in or about August 2022.

78.     Prior to the 2019 Flood, the Unit generated approximately $5,000.00 per month in rental income.

79.     The Unit remained vacant from the 2019 Flood until it was sold, resulting in substantial lost rents.

**<u>The AOAO Has Failed And Refused To Fulfill Its Obligations</u>**

80.     From the time Ms. Teske purchased the Unit to present, the AOAO and/or its managing agent have routinely ignored or unjustifiably delayed in responding to Ms. Teske's correspondence.

81.     Despite requests, the AOAO has also failed to confirm whether the plumbing issues have been disclosed to other unit owners.

82.     On February 22, 2023, by letter, Ms. Teske again requested the building plans, as-built drawings, Board meeting minutes, and correspondence related to any repairs to wastewater drainage pipes, among other documents.

83.     To date, the AOAO has not provided any documents, including, but not limited to, the requested building plans, as-built drawings, or Board meeting minutes.

84.     As a result of the AOAO's action and/or inactions, Ms. Teske has lost her job, credit, retirement, savings, and her career.

85.     The AOAO is and was obligated to cover the costs of repairs due to damage caused by failure of common elements.

86.     The AOAO failed to cover the costs of the repairs to the Unit due to the failure of common elements, namely the common element wastewater drainage pipes shared by the Unit and the Neighboring Units.

## COUNT I
## BREACH OF CONTRACT

87.     Ms. Teske repeats and realleges the allegations contained in paragraphs 1 through 86 of this Complaint.

88.     The Governing Documents are valid, binding, and enforceable contracts between Ms. Teske and the AOAO.

89.     Ms. Teske informed the AOAO of damage to the Unit sustained due to failures of the common element wastewater drainage pipes.

90.     Ms. Teske requested AOAO documents related to the damage to the Unit and to facilitate repairs to the same.

91.     The AOAO failed to repair the Unit after the 2019 Flood.

92.     The AOAO failed to provide AOAO documents related to the structures at Kuilima Estates East to facilitate repairs.

93.     The AOAO is in material breach of its obligations under the Governing Documents because of its failure to repair the common element wastewater drainage pipes and the damage to the Unit.

94.     The AOAO is in material breach of its obligation under the Governing Documents to provide documentation related to the damage to the Unit and to facilitate repairs to the same.

95.     As a direct and proximate cause of the AOAO's breaches, Ms. Teske has been damaged in an amount to be proven at trial and is entitled to recover said damages from the AOAO.

## COUNT II
## Breach of the Implied Covenant of Good Faith and Fair Dealing

96.     Ms. Teske repeats and realleges the allegations contained in paragraphs 1 through 95 of this Complaint.

97.     Ms. Teske has standing to enforce the Governing Documents.

98.     The Governing Documents are valid, binding, and enforceable contracts, and include an implied covenant of good faith and fair dealing that the parties would not do anything that would deprive the other of the benefits of the bargain therein.

99.     Ms. Teske fully performed her obligations under the Governing Documents.

100.    By its conduct, acts, and/or omissions described herein, the AOAO has materially failed to fulfill its obligations under the Governing Documents and has deprived Ms. Teske of the benefits of the bargain.

101.   The AOAO's actions and omissions as outlined herein do not comport with the faithfulness to an agreed common purpose and are inconsistent with the justified expectations of Ms. Teske.

102.   As a direct and proximate cause of the AOAO's breaches of the implied covenant of good faith and fair dealing, Ms. Teske has been deprived of the benefits of the Governing Documents and has been damaged in an amount to be proven at trial.

## COUNT III
## NEGLIGENCE

103.   Ms. Teske repeats and realleges the allegations contained in paragraphs 1 through 102 of this Complaint.

104.   The AOAO owed a duty to Ms. Teske.

105.   The AOAO is governed by its Bylaws and Declaration, and Hawaii Revised Statutes, Chapter 514B, all of which impose various duties on the AOAO and the Board.

106.   Ms. Teske placed its trust and confidence in the AOAO and the Board with regard to the Unit and as a former member of the AOAO.

107.   The AOAO breached its duty by failing to inspect, maintain, and/or repair the wastewater drainage pipes that connect the Unit and the Neighboring Units, which pipes constitute common elements.

108.   The AOAO breached its duty by failing to cover the costs of repairs to the Unit due to the AOAO's failure to maintain and/or repair the wastewater drainage pipes that connect the Unit and Neighboring Units, which constitute common elements.

109.   The AOAO breached its duty by failing to inform Ms. Teske and other unit owners of problems with the wastewater drainage pipes, which constitute common elements under the Governing Documents.

110.   As a direct and proximate cause of the AOAO's breach(es), Ms. Teske has been damaged in an amount to be proven at trial.

## COUNT IV
## NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION

111.   Ms. Teske repeats and realleges the allegations contained in paragraphs 1 through 110 of this Complaint.

112.   After the 2019 Flood, including on April 21, 2022, the AOAO, through one of its board members or its managing agent, represented to Gregory Dunn, agent for Ms. Teske, that it would cover the costs of repairs to the Unit.

113.   The AOAO, through the Board or its managing agent, either knew that its representations that it would cover the costs of repairs to the Unit caused by the 2019 Flood were false or lacked knowledge about the truth or falsity of those representations.

114.   The AOAO, through its Board or its managing agent, made the representations that it would cover the costs of repairs to the Unit caused by the 2019 Flood in contemplation of Ms. Teske's reliance upon them.

115.   Ms. Teske relied to her detriment on the AOAO's representations that it would cover the costs of repairs to the Unit caused by the 2019 Flood, commencing repair work on the Unit.

116.   Thereafter, the AOAO refused to cover the costs of repair to the Unit caused by the 2019 Flood.

117.   As a direct and proximate cause of the AOAO's negligent and/or fraudulent misrepresentations, Ms. Teske has been damaged in an amount to be proved at trial.

## COUNT V
## DISCRIMINATION UNDER THE FAIR
## HOUSING ACT, 42 U.S.C. 3604 & 3617

118.   Ms. Teske repeats and realleges the allegations contained in paragraphs 1 through 117 of this Complaint.

119.   It is unlawful to discriminate in provision of services or facilities in connection with property, because of race, color, religion, sex, familial status, or national origin.

120.   Ms. Teske is a protected class based on her race, color, religion, gender, familial status, and/or national origin.

121.   It is unlawful to interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 42 U.S.C. §§ 3603, 3604, 3604 and/or 3606.

122.   The AOAO failed to maintain and repair the common elements in the form of the wastewater drainage pipe connecting the Unit and the Neighboring Units.

123.   The AOAO covered the cost of the repairs to unit 37, but not to the Unit, owned by Ms. Teske.

124.   The AOAO discriminated in the provision of services or facilities in connection with the Unit.

125.   The AOAO's discriminatory acts had a significant, adverse, and disproportionate effect on a protected class.

126.   The AOAO and its Board interfered with Ms. Teske's exercise or enjoyment of her right to the Unit.

127.   The AOAO's actions constitute disparate treatment of Ms. Teske.

128.   The AOAO's actions had a disparate impact on Ms. Teske.

129.   The AOAO's policies and/or practices are arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law.

130.   The AOAO's policies and/or practices have a disproportionately adverse effect on members of a protected class.

131.   The AOAO's policies and/or practices have a robust causal link to the disparate impact.

132.   The AOAO's policies and/or practices cause disparity that is significant.

133.   The AOAO's policies and/or practices have a direct relation to the injuries sustained by Ms. Teske.

134.   As a direct and proximate cause of the AOAO's acts and practices, Ms. Teske has been damaged in an amount to be proved at trial.

### COUNT VI
### LOSS OF USE/LOST RENT

135.   Ms. Teske repeats and realleges the allegations contained in paragraphs 1 through 134 of this Complaint.

136.   Ms. Teske owned the Unit from November 2016 through August 2022.

137.   The 2019 Flood was caused due to failure of the common element wastewater drainage pipes connecting the Unit to the Neighboring Units.

138.   Maintenance and repair of the common elements at Kuilima Estates East is and was the responsibility of the AOAO.

139.   The AOAO breached its duties and obligations to maintain and repair the common element wastewater drainage pipes connecting the Unit and the Neighboring Units.

140.   As a direct and proximate cause of the AOAO's breaches, Ms. Teske was deprived of use of the Unit, specifically, the ability to rent the Unit out for income.

141.   Prior to the 2019 Flood, the Unit was generating approximately $5,000.00 per month in rental income.

142.   Due to the AOAO's misrepresentations, breaches of its various duties, negligence, and/or intentional, reckless, malicious, and/or willful conduct, the Unit was not repaired until August 2022.

143.   Accordingly, Ms. Teske was deprived of her use and enjoyment of the Unit for 22 months and was unable to rent the Unit out during that period.

144.   As a direct and proximate cause of the AOAO's misrepresentations, breaches of its various duties, negligence, and/or intentional, reckless, malicious, and/or willful conduct, Ms. Teske has been damaged in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Teske hereby prays for relief as follows:

A.     For a judgment in the principal amount of $296,677.14;

B.     Prejudgment interest in an amount to be shown;

C.     An award of special damages;

D.     An award of consequential damages;

E.     An award of punitive damages;

F.     An award to Ms. Teske of the attorneys' fees and costs incurred herein; and

G.     Such other and further relief as the Court deems just and proper.

DATED:  Honolulu, Hawaii, August 23, 2023.

/s/ Jason W. Jutz                             
NATHANIEL A. HIGA
JASON W. JUTZ
of Chun Kerr LLP,
a Limited Liability Law Partnership

Attorneys for Plaintiff
SARAH TESKE